[No. 19500.   Department One.—January 31, 1896.]

SOUTHERN PACIFIC RAILROAD COMPANY, RESPONDENT, *v.* SOUTHERN CALIFORNIA RAILWAY COMPANY ET AL., APPELLANTS.

EMINENT DOMAIN—NATURE AND EXTENT OF POWER — TAKING PUBLIC PROPERTY AND FRANCHISES — QUESTION OF LEGISLATIVE WILL.—The power of eminent domain is one of the inalienable incidents of sovereignty, which, treated simply as a question of power, may be exercised in favor of public uses over any and all property, private and even public; and the property and franchises of corporations as well as of individuals, although dedicated to public uses, may be taken for other public uses; but this inalienable power is to be exercised under and by virtue of the legislative will as expressed by the law-making power, and the right to exercise it must be given expressly or by necessary implication from power expressly given.

ID. — RAILROADS — CONDEMNING PART OF RIGHT OF WAY — ABSENCE OF SUBSTANTIAL INJURY—MORE NECESSARY PUBLIC USE. — A portion of the right of way of one railroad company constituting part of a public street may be condemned by another railroad company, where it appears that the condemnation proceedings work no substantial injury to the defendant and produce only such inconvenience as is covered by the damages awarded; and, if the portion of the right of way con-

demned is not essential to the enjoyment of the defendant's franchise and property as such, and does not materially curtail its rights and privileges, and is essential to the construction and existence of the plaintiff's railroad, the condemnation is for a more necessary public use, within the meaning of the code, notwithstanding some interference may be occasioned thereby to the defendant.

ID.—CONSTRUCTION OF UNNECESSARY SPUR TRACK—INTENTION TO PREVENT USE.—The construction of a spur track across the line of plaintiff's road without necessary use therefor, and for the purpose of preventing the plaintiff from having and using the portion of the right of way sought to be condemned, cannot give the defendant any advantage, or prevent the condemnation for a more necessary public use.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. JOHN L. CAMPBELL, Judge.

The facts are stated in the opinion of the court.

*William J. Hunseker*, and *C. N. Sterry*, for Appellant.

Railroad corporations are not vested with power to condemn any part of the right of way of other railroad corporations, except where one road may cross another. (Civ. Code, secs. 354, 355, 465; Stats. 1861, pp. 607, 615; *Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 323, 330; *Lake Merced Water Co.* v. *Cowles*, 31 Cal. 215, 217; *Housatonic R. R. Co.* v. *Lee etc. R. R. Co.*, 118 Mass. 391; *Boston etc. R. R. Co.* v. *L. & L. R. R. Co.*, 124 Mass. 368; *Baltimore etc. R. R. Co.* v. *North*, 103 Ind. 486; *Pittsburg etc. R. R. Co.'s Appeal*, 122 Pa. St. 511; 9 Am. St. Rep. 128; *St. Paul Union Depot Co.* v. *St. Paul*, 30 Minn. 363; *Appeal of Sharon Ry. Co.*, 122 Pa. St. 538; *Barre R. R. Co.* v. *Montpelier etc. R. R. Co.*, 61 Vt. 1; 15 Am. St. Rep. 877; *Illinois Cent. R. R. Co.* v. *Chicago etc. R. R. Co.*, 122 Ill. 473; *Matter of New York etc. R. R. Co.*, 99 N. Y. 23; Randolph on Eminent Domain, sec. 180.) Proceedings under the law of eminent domain whereby the property of the citizen is taken for public use are *in invitum*, and the law relating thereto should be strictly construed and followed, and, in no instance, extended beyond its plain import or well-defined limitations. (*Lindsay Irr. Co.* v. *Mehrtens*, 97 Cal. 676; *Murphy* v. *De Groot*, 44 Cal. 51; Cooley's Constitutional Limitations, 4th ed., 660;

Randolph on Eminent Domain, sec. 109; *Colby* v. *La Grange*, 65 Fed. Rep. 554.) And to the same effect, and as establishing the principle that property already devoted to a public use cannot be taken under the law of eminent domain, unless the right to do so is expressly given, see Lewis on Eminent Domain, sec. 643; *Illinois Cent. Ry. Co.* v. *Chicago etc. Ry. Co., supra; Lake Erie etc. R. R. Co.* v. *Board of Commrs.*, 57 Fed. Rep. 945; *In re Providence etc. R. R. Co.*, 17 R. I. 324; *Postal Tel. Cable Co.* v. *Norfolk etc. R. R. Co.*, 88 Va. 920.)

*F. W. Gregg*, and *William F. Herrin*, for Respondent.

Land occupied by one railroad company may be taken for the more necessary use of another railroad company. (Code Civ. Proc., sec. 1240; Civ. Code, sec. 1001; *Eastern R. R. Co.* v. *Boston etc. R. R. Co.*, 111 Mass. 125; 15 Am. Rep. 13; *Grand Rapids etc. R. R. Co.* v. *Grand Rapids etc. R. R. Co.*, 35 Mich. 265; 24 Am. Rep. 545; *Baltimore etc. R. R. Co.* v. *P. W. & Ky. R. R. Co.*, 10 Am. & Eng. R. R. Cas. 444, 470, 471; *Colorado etc. Ry. Co.* v. *Union Pac. Ry. Co.*, 41 Fed. Rep. 293; 10 Am. & Eng. Ency. of Law, 537, and cases cited; *California etc. R. R. Co.* v. *Southern Pac. R. R. Co.*, 67 Cal. 59, 60, 61; *North Carolina etc. R. R. Co.* v. *Carolina etc. Ry. Co.*, 83 N. C. 489. In the following additional cases it is held that if a second condemnation can be so carved out of a right of way previously granted to a railroad company as to leave the latter's track without hindrance or obstruction, the court has jurisdiction to order the condemnation. (*Mobile etc. R. R. Co.* v. *Alabama etc. R. Co.*, 87 Ala. 520; *Anniston etc. R. R. Co.* v. *Jacksonville etc. R. R. Co.*, 82 Ala. 297; *New Orleans etc. R. R. Co.* v. *Southern etc. Tel. Co.*, 53 Ala. 211; *Louisville etc. R. Co.* v. *Postal Tel. Cable Co.*, 68 Miss. 806. The legislature may authorize property held for public use to be condemned for another more urgent public use. (*Boston Water Power Co.* v. *Boston etc. R. R. Co.*, 23 Pick. 360; *Central Bridge Corporation* v. *Lowell*, 4 Gray, 474, 482; *Freeland* v. *Pennsylvania R. R. Co.*, 66 Pa. St. 91; *Brain-*

*ard* v. *Missisquoi R. R. Co.*, 48 Vt. 107; *Sixth Avenue R. R. Co.* v. *Kerr*, 72 N. Y. 332; *In re Mayor etc. of New York*, 135 N. Y. 253; 31 Am. St. Rep. 825.)

SEARLS, C.—This action is brought to obtain a decree condemning a strip of land twenty-six feet wide in and through Park avenue, Lugonia park, city of Redlands, county of San Bernardino, state of California, for the use of plaintiff as a right of way for a railroad from Redlands Junction to Crafton, all in said county of San Bernardino.

Plaintiff had judgment, from which judgment and from an order denying their motion for a new trial the defendants appeal.

The findings of fact by the court below may be epito-mized as follows: Plaintiff is a railroad corporation en-gaged in building, constructing and operating lines of railroad in the state of California and adjacent states and territories, and owns and operates a main line of railroad extending from San Francisco, in the state of California, to El Paso, in the state of Texas, which passes for many miles through the county of San Bernardino. That it intends to build and has partially built a branch or spur railroad from its main line at Redlands Junction, in said county, running in a northeasterly direction a distance in all of seven and a half miles, passing through the city of Redlands and terminating at Crafton in said county, for the purpose of conveying freight and pas-sengers, and for the purpose of conducting a general railroad business upon and over said spur or branch railroad.

Park avenue is and since 1887 has been a public street or highway in the city of Redlands, and in the building and construction by plaintiff of its said branch railroad a right of way therefor through said Park avenue, hav-ing a uniform width of thirteen feet, is necessary to the construction and maintenance of plaintiff's said road. The space condemned is described and is on the south-erly half of said avenue and will be referred to again.

Before the commencement of this action the board of trustees of the city of Redlands, by ordinance, gave and granted to plaintiff a franchise and privilege to construct, maintain, and operate its said branch railroad on and over the south thirty and one-half feet of said Park avenue, which franchise and privilege is still in force and effect.

Defendant, the Southern California Railway Company, is also a railroad corporation, is the owner of the fee of Park avenue, subject to the rights of the public for highway purposes, and is the owner of, and for four years before the commencement of this action had owned, possessed, and had operated, and is still operating, a steam railroad for ordinary railway purposes.

The center line of defendant's railroad is substantially identical with the central longitudinal line of Park avenue, which said avenue is one hundred feet in width.

The road of plaintiff, as laid out, will leave a space of twenty-four feet on the south side thereof which the court finds will be sufficient to allow the traveling public to travel with safety. There will also be a space of, say twenty-one feet, between the tracks of plaintiff's and defendant's roads, which the court finds will be sufficient for spurs or side tracks for defendant.

The space condemned has not been used by the defendant except as follows: 1. After plaintiff had graded its roadbed, defendant built a spur track thereon for the purpose of preventing the plaintiff from using the right of way, which spur defendant does not need. 2. Defendant had a small depot building sixteen by eighteen and one story high on the said condemned right of way, which defendant does not need, and which can readily and without injury to defendant be removed together with its spur track from the place where now situate.

The court also finds that the use by plaintiff of the land sought to be condemned is a more necessary public use than that to which it has been appropriated by defendant, and that the proposed right of way will fur-

CXI. CAL.—15

nish to plaintiff the most practicable, safe, and direct route and way for its road, and will be "most compatible with the greatest public benefit and the least private injury," and will not interfere with the successful operation and maintenance of defendant's road and is not necessary thereto. No question is made as to the damages, and the findings relating thereto need not be noticed.

Defendant F. H. Pattee, who is made a party defendant, owns certain lots abutting on Park avenue, and is awarded damages by reason of the construction of the road by plaintiff.

The first point made by the appellant is that the findings are insufficient to sustain the judgment. This contention is based upon the fact that such findings show that the defendant is the owner of the whole of Park avenue, subject only to the rights of the public for highway purposes, that for more than four years prior to suit brought it had maintained a line of railroad upon the center line of said avenue and had appropriated the same to a public use, and that as the strip of land in question, to wit, Park avenue, is not in excess. of the quantity authorized by law to be taken for railroad purposes, it cannot, by condemnation proceedings be taken for plaintiff for the same public use, to wit, for another and parallel railroad.

The power of eminent domain is one of the inalienable incidents of sovereignty, which, treated simply as a question of power, may be exercised in favor of public uses over any and all private and even public property.

In this view the property and franchises of corporations, as well as of individuals, although dedicated to public uses, may be taken for other public uses.

A state may not annul or modify a grant of land, but it may take the land for public use on making compensation. There is no such thing as extinguishing the right of eminent domain; and any attempt to do so by one legislature has no binding force upon its successors.

But this inalienable power, like most others, is to be

exercised under and by virtue of the legislative will, as expressed by the law-making power.

This being so, it is an accepted canon of the law that the right to exercise the power of eminent domain must be found in some statute of the state, and that such right must be expressly given, or arise by necessary implication from powers expressly given.

Among the powers conferred upon a railroad corporation by section 465 of the Civil Code is the right " to lay out its road not exceeding nine rods wide, and to construct or maintain the same with a single or double track, and with such appendages and adjuncts as may be necessary for the convenient use of the same."

The sixth subdivision of the same section authorizes a railroad corporation "to cross, intersect, join or unite its railroad with any other railroad, either before or after construction, at any point upon its route, and upon the grounds of such other railroad corporation," etc.

Turning to the subject of eminent domain, and we find that it may be exercised in favor of a variety of public uses, among which are "horse and steam railroads." (Code Civ. Proc., section 1238, subd. 4.)

Section 1240 of the same code, in defining the private property which may be taken under the title Eminent Domain, enumerates: "Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated."

As early as 1863 the supreme court of this state, in *Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 324, held that one railroad company could not locate its line along and upon the previously located line of another company, except at crossings and intersections, and that, as the law then stood, land appropriated by one company for the purposes of a railroad, and necessary thereto could not subsequently be condemned by another company for a like use.

In *Boston etc. R. R. Co.* v. *L. & L. R. R. Co.*, 124 Mass. 368, Chief Justice Gray, now a justice of the supreme

court of the United States, said: "The general principle is well settled, and has been applied in a great variety of cases, that land already legally appropriated to a public use is not to be afterward taken for a like use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication."

The authorities in support of this proposition are numerous and usually uniform. (See *Housatonic R. R. Co.* v. *Lee etc. R. R. Co.*, 118 Mass. 391; *Baltimore etc. R. R. Co.* v. *North*, 103 Ind. 486; *Pittsburg etc. Ry. Co.'s Appeal*, 122 Pa. St. 511; 9 Am. St. Rep. 128; *St. Paul Union Depot Co.* v. *St. Paul*, 30 Minn. 363; *Barre R. R. Co.* v. *Montpelier etc. R. R. Co.*, 61 Vt. 1; 15 Am. St. Rep. 877; *Matter of Buffalo*, 68 N. Y. 167.)

The foregoing cases in the main involve circumstances under which a former and a later public use may not stand together, or in other words, cases in which the later use must supersede the former; cases in which as was said in *In re New York etc. Ry. Co.*, 99 N. Y. 23: "Were the rule otherwise this evil would result; a corporation, No. 1, having the right of eminent domain, takes land from a similar corporation, No. 2, having the same right; No. 2 thereupon proceeds again to condemn it for its own use, and No. 1 retaliates; and so the absurd process goes on. It is clear the legislature never intended any such result."

The question is, Does the well-understood rule indicated apply to the facts of the present case? We think the question must be answered in the negative for the reasons:

1. The condemnation proceedings here work no substantial injury to the defendant, and produce only such inconvenience as may be covered by damages awarded.

The object of the rule which prevents the taking of property devoted to a public use for another and not more necessary public use is, not that there is anything sacred in the property as such, considered independent of the public use, but the protection of the use itself in

which the public as well as the owner is interested, and to save the use from annihilation.

Defendant purchased from the abutting owners, subject to the right of the public for highway purposes, Park avenue, a strip of land one hundred feet wide, and constructed its railroad on the center thereof. As such purchaser its rights were neither greater nor less than they would have been had it acquired a right thereto for a like purpose under the law of eminent domain.

It was the intention to dedicate it to a public use and the actual appropriation to such use which consecrated it beyond lands held in private proprietorship. So far as it was not thus appropriated, and as it was not reasonably essential to such use, it stood in the same category with other lands held by individuals or corporations, and was liable to condemnation proceedings for a similar or different public use.

It is *property appropriated to public use,* which is, under subdivision 3 of section 1239 of the Code of Civil Procedure, protected from condemnation except "for a more necessary public use"; and as to lands owned by defendant, but which have not been thus appropriated, and are not likely in the future to be needed for the existing public use, the inhibition does not apply: (*Baltimore etc. R. R. Co.* v. *P. W. & K. R. R. Co.,* 17 W. Va. 812; *Peoria etc. R. R. Co.* v. *Peoria etc. R. R. Co.,* 66 Ill. 174.)

"Nor will the general rule be applied to prevent the taking of a small and immaterial part of some of the appurtenances of the company, when the taking is necessary for the right of way of another company or other imperative use." (Lewis on Eminent Domain, sec. 267; *Chicago etc. Ry. Co.* v. *Chicago etc. R. R. Co.,* 112 Ill. 589; *New York etc. R. R. Co.* v. *Boston etc. R. R. Co.,* 36 Conn. 196; *North Carolina R. R. Co.* v. *Carolina Cent. Ry. Co.,* 83 N. C. 489; *Northern R. R.* v. *Concord etc. R. R.,* 27 N. H. 183.)

2. As before stated our law permits the taking of "property appropriated to public use, but such property

shall not be taken unless for a more necessary public use than that to which it has been already appropriated." (Code Civ. Proc., sec. 1240, subd. 3.)

The question then arises, Is the contemplated use by plaintiff of the land in question a more necessary public use than that to which it has been already appropriated by defendant? We think this question must be answered in the affirmative.

Treated as a mere question of right in the defendant, and it must be admitted that it is the owner of a right of way one hundred feet in width for the uses of its railroad, the tracks of which are laid thereon; but we are not now called upon to determine the question from that standpoint, but rather to view it in the light of the necessities of its ownership for a public use.

As an incident of defendant's right to own and operate a railroad, it has not been used at all except that portion covered by defendant's flag station and the small station building or depot which, according to the findings, can be readily moved across defendant's track, without inconvenience to the public or to defendant.

All these franchises and rights of way are given and granted upon the theory of public necessity and of the benefits accruing therefrom to the public. The fact that private persons and corporations, the owners of these franchises and rights, are the recipients of profits arising from the ownership and operation of the property, does not militate against the fundamental theory that the prime object is the benefit to the public.

The multiplication of railroads, with the conveniences and competition they bring, all redound to the welfare of the people at large.

Who shall say that the strip of land, thirteen feet in width, condemned by the court below for the use of plaintiff for its railroad track, and to be used for a railroad, is not a more necessary public use than any to which it has been appropriated or used by defendant? It is not a case of taking, destroying or curtailing defendant's franchise or any property essential to its full

and complete enjoyment.  Were this the case, it would
be a taking, not for another and *more necessary public
use,* but the taking of one man's property and conferring
it upon another for a precisely similar use—a proceed-
ing not tolerated in law.

The fallacy of appellant's argument on this branch of
the case is in confounding the incident with the thing
itself; the defendant's railroad and its right to the full
use and enjoyment thereof, with that portion of its
right of way which the court expressly finds is not es-
sential or necessary to such enjoyment.

A railroad company is authorized to take a given
quantity of land for a right of way, not as a reward for
constructing a road, but because it is regarded as neces-
sary to the construction and operating its line of rail-
road, and when a portion of such right of way is not
used, and is not necessary for the purposes of its crea-
tion and use, either in the present or future, as in this
case, then, as to the portion of such right of way not
necessary to its operation, the appropriation by another
railroad, where necessary to the use of the latter for a
roadbed, is an appropriation to a *more necessary public
use* within the purview of the code, and may be taken
upon compensation being made.

The wisdom of this provision in our law becomes
apparent wherever railroads converge upon cities, towns,
mountain passes, etc., and where the right of way of
the first appropriator may be in part necessary to sub-
sequently constructed roads, and may be taken by the
latter with only such "tolerable interference" as does
not materially curtail the rights of the first appropria-
tor, and can be fully compensated in money.

I repeat, the appropriation of a portion of the right
of way of a railroad, not essential to its enjoyment of
its franchise and property as such, by another railroad,
where essential to the construction and existence of the
latter, is to and for a *more necessary public use,* and the
fact that some interference may be occasioned thereby,
but which does not materially curtail the rights and

privileges of the former, does not take the case out of the wholesome rule adopted by our code.

Extended comment is not deemed necessary upon the fact that the defendant, after the line of plaintiff's road was located, constructed a spur track across the line of the same, for the reason that the court found that defendant had no use therefor, and constructed the same for the purpose of preventing the plaintiff from having and using such right of way. In such cases the authorities are to the effect that defendant could gain no advantage thereby. It follows from these views that the findings of the court support the judgment.

Appellants further object that "the evidence is insufficient to justify the decision of the court." It must suffice upon this head to say that, upon all the points upon which the findings are assailed, there was a substantial conflict in the evidence, and were we to analyze and discuss the evidence at length it would only lead to the inevitable conclusion that under such circumstances we are not authorized to disturb the findings. The errors of law complained of involve the same questions discussed under the head of the sufficiency of the findings to support the judgment, and need not be further noticed.

The judgment and order appealed from should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., VAN FLEET, J., GAROUTTE, J.

Hearing in Bank denied.