(No. 13961.—Judgment affirmed.)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* LAURA MAY CALDWELL, *et al.* Appellants.

*Opinion filed December 22, 1921—Rehearing denied Feb. 8, 1922.*

1. EMINENT DOMAIN—*when motion to dismiss petition is not preserved for review.* Questions arising on a preliminary motion to dismiss, traversing the allegation of the petition that it is necessary to acquire the lands in question, are not preserved for review in the Supreme Court where no ruling of the trial court is obtained on the motion, and the denial of a general motion to dismiss and to withdraw the petitioner's evidence at the close of his case is not a ruling on such preliminary motion.

2. SAME—*defendants must traverse allegation that petitioner attempted to make an agreement—waiver.* Property owners who have appealed from a judgment for the taking of their lands in a condemnation proceeding cannot argue that there is no competent evidence in the record to support the petitioner's allegation that it attempted to make a settlement with the owners where they have failed to traverse that allegation; and the question is waived by going to trial on the merits.

3. SAME—*when court has jurisdiction over property taken for State roads in two counties.* Under sections 2 and 5 of the Eminent Domain act a petition for condemnation may be filed in the county court of any county where all or a part of each of the several tracts sought to be acquired is located, and where all of one of the tracts to be taken for State roads and the greater part of another lie in one county, the county court of that county will have jurisdiction over all of both tracts.

4. SAME—*when jury may consider special benefits.* Although section 9 of the Eminent Domain act provides that the owner shall receive full compensation for land taken without regard to benefits

which may accrue to the land not taken, in estimating the damages to property not taken the jury may consider any special benefits to such property for the purpose of reducing or balancing the damages.

5. SAME—*what is true measure of damages to land not taken.* The true measure of damages or compensation for land not taken by the improvement is the difference between the fair cash market value of the property unaffected by the improvement and its fair cash market value as affected by it.

6. SAME—*when owners of property taken for a State road are not entitled to compensation for cost of fence.* Where property to be taken for a State road runs parallel with the right of way of a railroad company the owners of the property to be taken are not entitled to have the cost of constructing and maintaining a fence between the proposed road and the land not taken included in their compensation although the road will deprive them of the use of a fence which the railroad company was compelled to maintain along its right of way, but they are entitled to have the question considered in estimating damages to land not taken.

7. SAME—*owners of property taken for State road are not entitled to speculative damages from dangers in crossing the road.* The owners of property taken for a State highway are not entitled to speculative damages for dangers attending the crossing of the highway although the proposed road will separate the premises of the property owners from a small stock yard and loading-chute located on a railroad right of way adjacent to their land, but actual damage from the separation of the land from the shipping facilities may be considered as affecting the land not taken.

8. SAME—*judgment for taking property for State highway is sufficient if State is "authorized" to take the property.* In a proceeding to condemn land for a State highway the judgment is sufficient if it recites that the Department of Public Works and Buildings of the State "is hereby authorized" to take the property instead of ordering the property to be taken, as the State has a right to abandon the location and to refuse to pay the damages ascertained, and the statute requires only that the damages shall be paid before the petitioner has a right to take or use the land condemned.

9. HIGHWAYS—*State may accept donations of land or money for highways.* There is no statute which forbids the Department of Public Works and Buildings from accepting donations of land or money for a right of way for any portion of its State-wide system of hard roads, nor is there any reason based on good morals or public policy for denying the department the right to accept such donations.

APPEAL from the County Court of Piatt county; the Hon. W. A. Doss, Judge, presiding.

HERRICK & HERRICK, for appellants.

EDWARD J. BRUNDAGE, Attorney General, and THOMAS WILLIAMSON, (C. F. MANSFIELD, and F. M. SHONKWILER, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:.

The Department of Public Works and Buildings, pursuant to the authority given it by section 11 of the act providing for a State-wide system of hard roads, (Laws of 1917, p. 707,) filed its petition in the county court of Piatt county to acquire a right of way over the lands of appellants. The land which appellee seeks to acquire is to become a part of route No. 10 as described in section 9 of the same act, (Laws of 1917, p. 699,) and lies between the cities of Champaign and Monticello. The land consists of two tracts lying alongside the right of way of the Illinois Central Railroad Company, section 6 of the route lying wholly in Piatt county and section 5 of the route lying largely in Piatt county but extending about 1000 feet into Champaign county. The two tracts contain 10.10 acres. The question of damages was submitted to a jury, which returned a verdict fixing the damages for the land taken at $3535 and finding that there was no damage to the adjoining lands not taken. From the judgment entered on this verdict this appeal is prosecuted.

Appellants filed a motion to dismiss the petition, traversing the allegation of the petition that it was necessary, in order to carry out the provisions of the act establishing route No. 10, to acquire the lands in question. The record does not show that this motion was ever called to the attention of the court. No ruling of the court was obtained on

the motion and so no point has been saved for this court to consider. (*Gillette* v. *Aurora Railways Co.* 228 Ill. 261.) The usual general motion to withdraw from the consideration of the jury the evidence admitted on behalf of the petitioner and to dismiss was made at the close of the petitioner's case and at the conclusion of the taking of evidence in the case, but there was nothing in either of these motions to call this point to the court's attention, and the denial of the general motions was not a ruling on the preliminary motion traversing the allegation of the necessity to acquire the lands.

The petition alleges that appellee has sought to purchase the tracts in question but has been unable to agree with appellants upon the compensation for the taking and damaging of appellants' lands. Appellants argue that there is no competent evidence in the record to support this allegation. This point was not traversed by appellants but was waived by their going to trial on the merits. *O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; *West Skokie Drainage District* v. *Dawson,* 243 id. 175.

It is next contended that the county court of Piatt county did not have jurisdiction to try the cause for the reason that the lands lie in two counties. Section 2 of the Eminent Domain act provides that the petition may be filed in the county court of any county "where the said property or any part thereof is situate." (Harker's Stat. p. 2005.) Section 5 of the same act provides that "any number of separate parcels of property situate in the same county may be included in one petition." It follows from these two provisions that the petition may be filed in any county where all or a part of each of the several tracts sought to be acquired are located. (*St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 Ill. 508;· *Toluca, Marquette and Northern Railway Co.* v. *Haws,* 194 id. 92.)· All of one of the tracts in question, and a part—in fact far the greater part—of the other tract, were located in Piatt county. This

gave the county court of Piatt county jurisdiction over both tracts.

It developed on the trial of the case that some of the witnesses for appellee had been active in the location of this particular part of route No. 10 and that they had donated a right of way across their lands and had donated money to procure sections of the right of way that had to be purchased. It also appeared that some of the witnesses had signed a bond indemnifying the State against damages that might be assessed for sections of the right of way acquired by eminent domain. It is contended that this renders the proceeding void. We know of no law that forbids the Department of Public Works and Buildings from accepting donations of lands for right of way or of moneys to procure one, nor do we see any sound reason, based on good morals or public policy, for denying the department the right to accept such donations. Section 81 of the Roads and Bridges act authorizes such donations to be made to town and county highway officials, and declares agreements in writing promising such donations to be valid and binding contracts, enforceable in any court having jurisdiction. This law has been on the statute books for decades, and if an express declaration of the legislature is needed to declare the public policy of the State in this regard this statute supplies the need.

Appellants argue with evident earnestness that their lands are about to be taken without just compensation. As we have said, the strip of land is along a railroad right of way, and they contend that they have an easement in the division fence which the statute compels the railroad company to construct and maintain. It is their position that they have been deprived of this valuable piece of property and that they will be put to great expense in the construction and maintenance of a line fence between their lands and the public highway and that no compensation has been awarded them for this damage. It also appears that there

are a side-track and a small stock yard and loading-chute located on the railroad right of way adjacent to the lands of appellants, known as the Caldwell switch, and that these shipping facilities are now accessible to appellants without leaving their own premises. The taking of the lands in question and the construction of the highway on these lands will make it necessary for appellants to leave their premises and to cross the public highway in order to reach this stock yard and side-track. While there is no evidence in the record that appellants are making any use of these shipping facilities, it is contended that the trouble and dangers incident to crossing this public highway are a damage to their lands that are not taken and that they are entitled to compensation for this damage. Section 9 of the Eminent Domain act provides that the owner of the property taken shall receive full compensation for the lands taken, and that no benefits or advantages which may accrue to property or lands affected shall be set off against or deducted from such compensation, (Harker's Stat. p. 2009,) and this court has construed that section to mean just what it says. On the other hand, when the jury comes to consider the question whether the portion of the property not taken was damaged, it is authorized to consider any special benefits accruing to such property for the purpose of reducing or balancing the damages. (*City of Chicago* v. *Mecartney,* 216 Ill. 377.) The true measure of compensation for land not taken by the improvement is the difference between the fair cash market value of the property unaffected by the improvement and its fair cash market value as affected by it. (*Brand* v. *Union Elevated Railroad Co.* 258 Ill. 133.) Appellants were not entitled to compensation for the cost of constructing and maintaining their fence as such, but were entitled to have it considered only so far as it showed damages to land not taken; (*Board of Trade Telegraph Co.* v. *Darst,* 192 Ill. 47;) and the same is true of whatever damage appellants suffered by reason of their being

separated from the railroad switch and shipping pens. They were not entitled to speculative damages for dangers attending the crossing of this public highway, which were merely possible damages and not damages that were reasonably probable. (*McReynolds* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152.) The uncontradicted evidence shows that the 700 acres of appellants' lands not taken will receive special benefits of from $10 to $25 an acre by reason of the location of this hard road through the lands. The jury was entitled to offset the damages to the lands not taken with the special benefits accruing to said lands, and, as we view the evidence in the record, it was fully justified in finding that there was no damage to the lands not taken.

Appellants object to practically every instruction that was given by the court on behalf of appellee, but most of the objections are based on contentions which we have already considered and decided contrary to the views of appellants. We have examined the instructions and find that they are free from substantial error. The damages awarded by the jury were all that the evidence, fairly considered, justified, and no good purpose can be served by discussing at length the evidence or the numerous objections to the instructions.

Appellants contend that the judgment entered by the county court is not in compliance with the statute, in that it does not order appellee to enter upon the property and to use the same upon payment of the compensation awarded. The language of the judgment objected to is, that upon the making of the payments ordered, "the Department of Public Works and Buildings of the State of Illinois be and it is hereby authorized to enter upon and take possession of and use for the right of way purposes" the tracts of land so taken. The contention of appellants is that this gives the State an option to take the premises, whereas the statute requires that it be ordered to take them. This contention

is not sound. The State has a right to abandon the location and to refuse to pay the damages ascertained. What the statute requires is, that the damages shall be paid before the petitioner has a right to take or to use the lands condemned. The judgment entered in this case conformed to that requirement. *Peoria, Pekin and Jacksonville Railroad Co.* v. *Peoria and Springfield Railroad Co.* 66 Ill. 174; *St. Louis and Southeastern Railway Co.* v. *Teters,* 68 id. 144.

The judgment of the county court is affirmed.

*Judgment affirmed.*