(No. 1933—

BOARD OF EDUCATION, SCHOOL DISTRICT 86, TAZEWELL COUNTY, ILLINOIS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

BEN L. SMITH, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

This case is one of a group of cases known as the East Peoria Bridge cases, all of which arose by reason of the construction of the east approach to the Illinois River bridge known as the Cedar Street Bridge, which connects the cities of Peoria and East Peoria. The approach in question constitutes a part of S. B. I. Route No. 121, and the traveled portion thereof consists of a four-lane hard-surfaced highway.

The facts so far as they apply to all of this group of cases are fully set forth in the opinions heretofore filed in the following cases, to-wit:

*George Treharne, et al.* vs. *State,* No. 1934;

*Albert J. Moore, et al.* vs. *State,* No. 1975; and

*Mamie Umdenstock, et al.* vs. *State,* No. 1915;

all of which were decided at the present term of this court; to which cases reference is made for such facts.

The facts so far as they apply particularly to this case, are as follows:

The Board of Trustees of Fondulac Township, Tazewell County, Illinois, holds the legal title to Lots 595, 596, 597, 598, and 599 in Richland Place Addition to the City of East Peoria, which property is in the possession of the claimant and is used for the purposes of a grade school, the claimant having constructed thereon a modern eight-room brick-and-stone school building facing Globe Street, at a cost of approximately $93,000.00. The west or front portion of the building is two stories in height, has no basement, and is three feet ten inches above grade. The east or rear portion of the building is one story in height and is occupied as a gymnasium and boiler room. The top of the sill of that portion of the building is three to five inches above the level of the ground.

The premises in question are bounded as follows:—on the west by Globe Street, on which it has a frontage of two hundred (200) feet; on the south by Maple Street, on which it has a frontage of 136.2 feet; on the north by a fifteen-foot alley extending in an easterly and westerly direction, on which it has a frontage of two hundred seventy (270) feet; and on the east by the property of the Caterpillar Tractor Co.

Prior to the construction of the approach in question, Lots 557 to 564, both inclusive, in said Richland Place Addition bordered on the north side of the aforementioned alley, and were directly north of the aforementioned school property, being located between said school property and Roosevelt Street. The approach in question is constructed on said Lots 557 to 564 inclusive, and covers practically all of such lots except a small portion of the north end thereof;—the south right-of-way line of said S. B. I. Route 121 being approximately fifty-five (55) feet north of the north line of the school building. The grade or fill of such approach at the east line of the school property is approximately six feet four inches above the level of the ground there, and the grade or fill of such approach at the west line of said school property is approximately seven feet one inch above the level of the ground there. The grade or fill of the Globe Street approach to said S. B. I. Route 121 commences at the south line of Lot 595 and increases in height to three feet three inches at the north line of said lot.

Prior to the construction of the approach in question, claimant had constructed a tile drain which drained the toilets and lavatories of said school building and connected with a drainage ditch in that vicinity. In the work of constructing said approach, said tile drain was damaged and the claimant was required to rebuild 1,300 feet thereof, at a cost of $1,375.00.

Claimant produced, among others, a number of witnesses who were principally teachers and others connected with the school and who testified in substance that on account of the heavy traffic on the roadway, there is an additional hazard to the school children in going to and returning from school; that there is an added responsibility on the part of the teachers in caring for the children while at school; that there is an increased patrol duty; that the children are distracted

from their work by the passing traffic; that the noise of the traffic interferes with the regular conduct of the lessons, and requires greater effort on the part of the teachers; that the fumes of passing automobiles interferes with the work of the school; that the efficiency of the school has been impaired, and that as the result thereof, the property has been damaged for school purposes.

Claimant also contends that its property has been damaged by interference with the access thereto; by interference with the natural drainage thereof; by dust blowing over the property in summer; by the noise of and fumes from passing vehicles; and by interference with the free circulation of air across said property.

Claimant's witnesses estimated the damages to the property for school purposes, based on some or all of the aforementioned elements of damage, at various percentages, ranging from twenty-five (25) to seventy-five per cent (75%) of the cost of the building and grounds.

Respondent produced two witnesses on the question of damages, both of whom testified that in their opinion the value of the school property had not been affected as the result of the construction of the approach in question.

Claimant lays great stress on its claim that six of the eight rooms in the school building have a direct view of the hard road from where the children sit in their seats; that there is a large amount of traffic over such road, and that inasmuch as such traffic is within the view of the pupils in their seats, the proper operation and management of the school has been materially interfered with.

Claimant originally asked for damages in the sum of Ten Thousand Dollars ($10,000.00), but thereafter increased the amount demanded to Twenty Thousand Dollars ($20,000.00).

In ordinary cases, where private property is not taken, but is damaged, for public use, the proper measure of damages is the difference between the fair cash market value of the property unaffected by the improvement, and its fair cash market value as affected by it. *Department of Public Works* vs. *McBride*, 338 Ill. 347; *Department of Public Works* vs. *Caldwell*, 301 Ill. 242; *Brand* vs. *Union Elevated Co.*, 258 Ill. 133.

However, as stated by our Supreme Court in the case of *City of Chicago* vs. *Farwell*, 286 Ill. 415, "There are a few exceptional cases in which market value cannot be the legal standard because the property is of such nature and applied to such special use that it cannot have a market value, such as a church, college, cemetery, clubhouse or terminal of a railroad. \* \* \* \* \* \* As to such property, the law permits a resort to any evidence available to prove value, such as the amount of business done or the use made of the property, and the like."

The only case in this State which has come to our attention involving a similar claim for damages to school property is the case of *Illinois Central R. R. Co.* vs. *Trustees of Schools*, 212 Ill. 406. In that case the declaration averred that the defendant constructed its railroad track near plaintiff's two-story brick schoolhouse, and that in passing, the locomotives emitted, discharged and threw out and stirred up great volumes of smoke, cinders, ashes and dust, and cast the same over, upon and into said premises, and that the trains caused loud and ominous noises and made the ground tremble, vibrate and shake, causing the school in said premises to be disturbed and frequently to suspend. In considering the right of plaintiff to recover in such case the Supreme Court said:

"There are certain injuries to property for which the owner may recover damages although no part of the property itself is actually taken for the public use. While there is but little difficulty in laying down general rules concerning the nature of such injuries, there is sometimes much difficulty in applying them to particular cases and drawing a definite line between injuries for which the law allows a recovery and those for which it affords no remedy. The provision of the constitution that private property shall not be damaged for public use was not intended to reach every possible injury that may be occasioned by a public improvement. There are certain injuries incident to ownership of property in towns or cities which directly impair its value, for which the law does not afford, and never has afforded, any relief. (*Rigney* vs. *City of Chicago*, 102 Ill. 64.) Those injuries are compensated for by the conveniences and advantages of civilization, and both injuries and benefits are common and public."

The court there also quoted with approval from the case of *Rigney* vs. *City of Chicago*, 102 Ill. 64, and then said:

"The important question is to determine what is a special damage and injury, within the meaning of that and other cases. One thing that is clear is, that the damage must be a damage to property and not a mere personal inconvenience or injury, such as a damage to trade or business. (*Hohmann* vs. *City of Chicago*, 140 Ill. 226.) If a right of action is merely personal,

without reference to property, the constitution does not guarantee compensation. If the injury amounts only to an inconvenience or discomfort to the occupants of property, which would authorize a personal action but not affecting the value of the property, it is not within the provision. The injury must also be actual, susceptible of proof and capable of being approximately measured. It must not be merely speculative, remote, prospective or contingent. The special damage must be different in kind from that sustained by the general public, although it does not cease to be special because a considerable number are affected in the same way."

From a consideration of such case 'we are of the opinion that the additional hazard to the school children in going to or returning from school; the additional responsibility on the part of the teachers in caring for the children while at school; the increased patrol duty; the fact that the children are disturbed in their work by passing traffic; and that the noise of the traffic and the fumes from passing automobiles interfere to some extent with the schoolwork, and decrease the efficiency thereof, are elments which cannot be taken into consideration in estimating the damages which the claimant is entitled to recover in this case.

A review of the authorities on the legal questions involved in this claim, and a consideration of the several elements which may be taken into account in determining the damages to which claimant is entitled, are contained in the aforementioned case of *Albert J. Moore, et al.* vs. *State,* No. 1975, and there is no necessity for a repetition thereof in this case.

Upon a consideration of all of the evidence bearing upon the elements of damage which may properly be taken into consideration, as well as the view of the premises had by the court, we feel that the sum of Two Thousand Dollars ($2,000.00) is adequate compensation for the damages sustained, and an award is therefore hereby entered in favor of the claimant for such amount.